## Zahn v. McMillin.

*Tenants in common—Equity—Accounting—Secret contract—Parties.*

A. and B., two of several tenants in common of oil and gas leases secured an agreement from their cotenants by which they were to take the gas and pay one fourth of the net proceeds to all the owners. At the time the agreement was made, they concealed from their cotenants the fact that they had an offer from one R. to take the property and pay the owners one half of the proceeds of the sale of the gas. On the same day that they made the agreement with the cotenants, they entered into a contract with R. by which they were to receive one half of the proceeds. The contract with R. was subsequently assigned to a corporation. The cotenants after they discovered the fraud notified the corporation of the facts, and warned the corporation not to make further payment to A. and B. Subsequently a bill in equity was filed by the owners against A. and B. and the corporation. In this proceeding an account was stated between A. and B. and the owners, in which A. and B. were charged with a large sum under the R. contract, and given credit for various expenses. A decree was then entered that A. and B. should pay to the owners the net amount found due by the master less their own share as owners, and in default of such payment by them that the corporation should pay such amount. *Held,* that there was no error in the decree.

Argued Oct. 17, 1900. Appeal, No. 1, Oct. T., 1900, by Big Meadows Gas Company, from decree of C. P. Lawrence County, Sept. T., 1894, No. 1, on bill in equity in case of William A. Zahn, Robert Frew, C. W. Bassett, W. C. Connelly, Jr., J. M. Arnold and Charles M. Johnston, Administrator of the

Estate of William P. Bennett, deceased, v. E. A. McMillin, J. M. McMillin and the Big Meadows Gas Company. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Bill in equity for an injunction and for an account.

From the record it appeared that E. A. McMillin and J. M. McMillin owned an interest with the plaintiffs in certain oil and gas leases. The McMillins on January 31, 1893, secured a contract from their cotenants by which they were to take the gas and pay one fourth of all the net proceeds to all the owners. Prior to the execution of this contract the McMillins had an offer from O. C. Redic to purchase the gas and pay the owners one half of the proceeds thereof. This offer they concealed from their co-owners, and on the same day on which they entered into the agreement, they entered into a contract with Redic in accordance with the terms of his offer. After the plaintiffs discovered the fraud, they filed this bill in equity, and on appeal to the Supreme Court a decree was entered that the McMillins should account to the plaintiffs. See 179 Pa. 146, 156. The case was remitted to the common pleas and S. L. McCracken, Esq., was appointed master to state an account.

The master found the facts to be as follows:

1. After the contract between James M. McMillin and Edward A. McMillin of the one part, and Oliver C. Redic of the other part, was made, being the contract dated January 31, 1893, called the Redic contract, Redic began the fulfilment of said contract by the construction of a gas pipe line from the city of New Castle to the gas wells mentioned in said contract. Before the line was completed, the Big Meadows Gas Company, one of the defendants, was organized by said Redic and his associates, and this company completed said pipe line under said Redic contract and has ever since been operating under said contract, obtaining the gas from the 1,000 acres mentioned in that contract, and conducting said gas through said pipe line to New Castle.

2. That the total amount which became due from the Big Meadows Gas Company to the McMillins, prior to the decision by the Supreme Court in this case, for gas conducted through said pipe line, under the Redic contract is $25,899.05, and a

portion of which sum was collected from the 1,000 acres of leaseholds, and a portion from outside territory, mentioned in contract exhibit " B," and that the exact amount of money received from the sale of gas produced on the 1,000 acres cannot be definitely ascertained, nor the amount produced from the sale of gas from the outside territory, and the whole sum of $25,899.05 was paid to the McMillins by the Big Meadows Gas Company for gas, and no part of it consists of moneys paid for drilling wells, packing wells or otherwise.

2. That the McMillins have paid out on the 1,000 acres as expenses $5,717.37, out of which they should have a credit of $2,958.68, and on outside territory from which gas was produced, $11,529.12, for the one half of which they should have credit, viz: $5,764.56, making their total credit on $25,899.05 from expenses $8,723.24, and to W. A. Zahn, treasurer, $627.15, amounting in all to $9,350.39 which deducted from the $25,899.05 leaves a balance due of $16,548.66.

3. That on or about March 1, 1894, the Big Meadows Gas Company was notified by Chas. M. Thorp, attorney, acting on behalf of plaintiffs, by a letter dated February 26, 1894, addressed to the Big Meadows Gas Company, J. M. Mayne, secretary, that said Redic contract had been made by the McMillins under circumstances which constitute the latter trustees for the owners of said leaseholds, and which in fact made said contract the contract between the owners of said leaseholds and Redic; and also that all payments then or thereafter due from said Big Meadows Gas Company under said contract, should be made to the owners of said leaseholds, through their treasurer, W. A. Zahn; and said company was warned against making any further payments under said contract to the McMillins.

4. On June 9, 1894, the bill in equity in this case was filed, in which the Big Meadows Gas Company was joined as defendant, setting up that said Redic contract was in fact the property of the owners of said leaseholds, and that all payments under the same should be made to them, and asking for an injunction restraining the Big Meadows Gas Company from paying any further sums to the McMillins under said contract. Said bill was served on June 9, 1894, on the Big Meadows Gas Company and on E. A. McMillin and J. M. McMillin. On December 24, 1894, the Big Meadows Gas Company filed a cross

bill setting forth that they had been sued by the McMillins, and judgment had been obtained for $2,917.28, for moneys due under the Redic contract, and also that fi. fa. had been issued to collect said judgment; and praying that an injunction issue, restraining the McMillins from proceeding further to collect said judgment until the dispute between the plaintiffs and the McMillins should be decided, or until the McMillins should give security, against the claims of the plaintiffs. On January 2, 1895, the motion for a preliminary injunction prayed for in said cross bill was argued, and it was ordered that said defendants give bond with surety in $7,500, to indemnify the Big Meadows Gas Company, and said bond being given, the motion for an injunction was refused. The bond was filed January 4, 1895, and thereupon the Big Meadows Gas Company resumed payments to the McMillins, and have since paid the sum of $14,213.05.

5. At the time of making said Redic contract, January 31, 1893, there were but two wells drilled on the 1,000 acres, viz: the Wellhouser and Houk wells. Afterwards other wells were drilled on said 1,000 acres for the purpose of increasing the supply of gas, to be supplied under the Redic contract. The McMillins then ceased drilling on said territory and drilled on outside territory, from which gas was produced.

The wells on both territories were connected with said line of the Big Meadows Gas Company, and conducted through said line to New Castle without measurement of the amount produced from the different territories, the two productions being intermingled.

6. The wells drilled on the additional territory were drilled partly on leases obtained before the making of the Redic contract, and partly on leases obtained after the making of the same, and no itemized account of the expenses of the outside territory was furnished, but the total expenses were fixed by the testimony of E. A. McMillin at $11,529.12.

7. After the making of contract exhibit " A " in plaintiffs' bill, plaintiffs took no part in the location or drilling of wells on the 1,000 acres, and left this matter to the McMillins.

8. The McMillins never had any agreement or arrangement with plaintiffs by which they were to receive anything for services rendered.

In accordance with the foregoing, the master makes the following statement of account:

E. A. & J. M. McMILLIN, Dr.

To WILLIAM A. ZAHN, Treasurer.

| | | |
|---|---:|---:|
| To total amount received from Big Meadows Gas Co. | | $25,899.05 |
| By expenses of operations and rentals paid | $8,723.24 | |
| By cash paid W. A. Zahn, Treas. | 627.15 | |
| | 9,350.39— | 9,350.39 |
| | Balance | $16,548.66 |
| Interest on balance from July 3, 1896, 2 yrs., 2 mo., 12 days. | | 2,184.42 |
| | Total . | $18,733.08 |

On exceptions the master modified his report so as to recommend that seven twenty-seconds of the amount decreed should be retained by E. A. McMillin, as that fraction represented his interest in the leases.

Exceptions to the master's report were overruled in an opinion by MILLER, P. J., specially presiding, and the following decree was entered:

And now, September 6, 1899, it is ordered, adjudged and decreed:

1. That the plaintiffs pay the costs of this proceeding before the master, namely, $340.60, with the right to recover same over against defendants.

2. That E. A. & J. M. McMillin retain from the moneys in their hands, for the use of E. A. McMillin, the seventeen twenty-second parts thereof, to wit: $5,960.53.

3. That E. A. & J. M. McMillin pay to William A. Zahn, treasurer, the fifteen twenty-second part of the moneys in their hands, viz: $12,772.55, with interest from September 15, 1898.

4. In case E. A. & J. M. McMillin do not within sixty days from the entering of this decree pay over to William A. Zahn, treasurer, the sum of $12,772.55, with interest from September 15, 1898, as provided in the third paragraph of this decree, then it is ordered, adjudged and decreed that the Big Meadows Gas Company pay to William A. Zahn, treasurer, the said sum of $12,772.55, with interest thereon from September 15, 1898.

*Error assigned* was the decree of the court.

*Edwin S. Craig* and *B. A. Winternitz,* with them *D. B. & L. T. Kurtz* and *John G. McConahy,* for appellant.—The court of common pleas itself, had no jurisdiction, power or authority on the pleadings in this case and the adjudication of the Supreme Court thereunder, to state an account between the gas company and either the plaintiffs or the McMillins: Brantingham v. Brantingham, 12 N. J. Eq. 160; Hoyt v. Hoyt, 27 N. J. Eq. 399; 1 Daniell's Chancery Pleading & Practice (6th ed.), *327; Beach's Mod. Eq. Prac. (1st ed.), sec. 99; Story's Equity Pleading, sec. 257; Carneal v. Banks, 10 Wheaton, 181; Boon v. Chiles, 10 Peters, 177.

In order to entitle a plaintiff to a decree, under the general prayer, different from that specifically prayed, the allegations relied on must not only be such as to afford a ground for the relief sought, but they must have been introduced into the bill for the purpose of showing a claim to relief, and not for the mere purpose of corroborating the plaintiff's right to the specific relief prayed, otherwise the court would take the defendant by surprise, which is contrary to its principles: 1 Daniell's Chancery Pleading & Practice (6th ed.), *381; Rennie v. Crombie, 12 N. J. Eq. 457; Thomas v. Ellmaker, 1 Parsons's Select Eq. Cases, 98; Passyunk Bldg. Assn.'s App., 83 Pa. 441; Del. & Hud. Canal Co. v. Penna. Coal Co., 21 Pa. 131.

*A. Leo Weil,* with him *S. W. Dana* and *Charles M. Thorp,* for appellee, cited, Winton's App., 97 Pa. 385, Allison & Evans's App., 77 Pa. 221, Wilhelm's App., 79 Pa. 120, Myers v. Bryson, 158 Pa. 246, Odd Fellows' Savings Bank's App., 123 Pa. 356, and Schuey v. Schaeffer, 130 Pa. 23.

PER CURIAM, January 7, 1901:

The bill in equity and the answers to it were filed in June, 1894. A master was appointed on February 24, 1897, to take an account as decreed by this court in 179 Pa. 156. Testimony, oral and documentary was taken in May, 1897, in accordance with the agreement of the parties. On June 24, 1897, "the case, pursuant to adjournment, was argued by the attorneys interested, and the hearing closed with the exception

of briefs which counsel desired to submit, and were afterwards furnished." On September 24, 1898, exceptions were filed to the master's report by the Big Meadows Gas Company, and two days after that exceptions to the report were filed by the Mc-Millins. Of all the exceptions filed as aforesaid the sixth alone was sustained. The rest were overruled and dismissed for reasons appearing in the report. The decree recommended by the master in his original report was therefore superseded by the decree recommended in the amended report. The master's findings of fact as qualified by the sixth exception seem to us, upon a review of them, as substantially correct. The learned court below in a clear and satisfactory opinion reviewed the findings aforesaid and the exceptions taken to them. The result of the review was an approval of the findings and conclusions of the master, and an adoption of the decree finally recommended by him.

As we have not discovered any sufficient cause for setting aside the decree recommended by the master and approved by the court, we overrule and dismiss all the assignments of error.

Decree affirmed and appeal dismissed at the cost of the appellant.